UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALCOLM BEATON,

                 Plaintiff,                              Civil Action No.
                                                         14-CV-13590
vs.
                                                         Honorable Patrick J. Duggan
CITY OF ALLEN PARK, WILLIAM
MATAKAS, and JOYCE PARKER,

                 Defendants.
_____/

**<u>OPINION AND ORDER</u>**
**<u>(1) GRANTING THE MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS CITY OF ALLEN PARK AND WILLIAM MATAKAS (2)
GRANTING IN PART AND DENYING IN PART DEFENDANT JOYCE
PARKER'S MOTION TO DISMISS, (3) DENYING PLAINTIFF'S
REQUEST FOR COSTS AND ATTORNEY FEES, and (4) LIFTING THE
STAY OF DISCOVERY ENTERED ON FEBRUARY 20, 2015</u>**

## I. INTRODUCTION

This is a First Amendment freedom of speech case brought pursuant to 42

U.S.C. § 1983. Plaintiff Malcolm Beaton is suing the City of Allen Park ("the

City"), its mayor, William Matakas, and its emergency manager, Joyce Parker.

Plaintiff claims that his freedom of speech rights were abridged and that he was

retaliated against when Defendant Matakas interrupted Plaintiff's speech during

the portion of a city council meeting devoted to citizen comments, and then

directed a law enforcement officer to remove Plaintiff from the meeting. In

addition, Plaintiff alleges that Defendant Parker retaliated against him for filing the present lawsuit when, shortly after the lawsuit was filed, she suspended operation of a City commission on which Plaintiff was serving.

Now before the Court are (1) the summary judgment motion of Defendants City of Allen Park and Matakas, and (2) Defendant Parker's motion to dismiss. The Court held oral argument on May 7, 2015. For the reasons that follow, the Court will grant the summary judgment motion of the City and Matakas, and grant in part and deny in part Parker's motion to dismiss.

## II. BACKGROUND

The pertinent background is straightforward and undisputed. On April 9, 2014, Defendant Parker, the City's emergency manager, sent a memorandum to Defendant Matakas, the City's mayor, and members of the city council. In the memorandum, Parker proposed that the City proceed with an emergency loan to allow it to satisfy certain obligations that were then owing (mainly, unpaid pension contributions). Under Michigan law, before an emergency manager can "authorize the borrowing of money by [a] local government," "he or she shall submit his or her proposed action to the governing body of the local government," who then "shall have 10 days from the date of submission to approve or disapprove the action proposed by the emergency manager." Mich. Comp. Laws §§ 141.1559(1), 141.1552(1)(u). In her April 9 memorandum to Matakas and city council

2

members, Parker explained her loan proposal and requested that the city council take action either approving or disapproving the proposed loan in accordance with the statute.  *See* 4/9/14 Memo of Parker, Defs.' Mot. at Ex. A (ECF No. 30-2).

After receiving Parker's memorandum, Matakas sent a separate memorandum to members of city council calling for a special city council meeting "for the purpose of the council expressing itself regarding Ms. Parker's memo." The memorandum also includes attachments and "suggested resolutions to focus our ideas."  The suggested resolutions are supportive of Parker's loan proposal. 4/9/14 Memo of Matakas, Defs.' Mot. at Ex. B. (ECF No. 30-3).

The special city council meeting was scheduled for April 14, 2014.  The sole item on the written meeting agenda was: "Council review of Emergency Manager's April 9th memo pursuant to [§ 141.1559(1)]."  The agenda called for "citizen comments," limited to three minutes per person, "elected official comments," also limited to three minutes per person, followed by "adjournment." Agenda, Defs.' Mot. at Ex. C (ECF No. 30-4).

The special meeting took place on April 14, as scheduled.  During the citizen comments portion of the meeting, Plaintiff addressed Matakas and the city council members.  The record contains audio and visual footage of Plaintiff's presentation.

Plaintiff began his remarks by asking who called the meeting.  He then complained that "citizens don't get the opportunity to question [Parker's] financial

dealings," and informed Matakas and the members of city council of his general

view on the appropriateness of the City borrowing money:

> Once before, they were going to take a loan out in this town. You
> cannot borrow your way out of debt. If [Parker] gets away with this,
> somebody in the future is going to have to pay that money. Just like
> the City of Detroit, and Kwame Kilpatrick took those loans out there,
> and what is the financial situation in the City of Detroit?

Plaintiff then began discussing the condition of the City's police and fire

departments:

> And when you do that [borrow money], look at the condition of our
> police and our fire department even though we passed that millage on
> the sixth. We used to get the cream of the crop in the police and the
> fire department when we had a couple of dollars. In case you don't
> know about it because you wouldn't let me speak last meeting, we
> cannot get interested candidates even though they pay $10,000 to go
> through the school to become police officers.

Before Plaintiff could finish his point, he was interrupted by Matakas, who banged

his gavel and told Plaintiff that "this is about what she [Parker] is proposing to do."

Plaintiff rebutted, "yes, it's about money."  Then Plaintiff asked: "Are we

embarrassed to talk about what's happening in our City?  Are we going to cover it

up and give it a pound on that [gavel] and say that anyone who talks about money

is out of order?"  Matakas faulted Plaintiff for "talking about the police and fire

department" because, according to Matakas, "I don't think it's relevant to the

question [of] this council meeting."  Interrupting Matakas, Plaintiff countered that

"the police and fire are the biggest costs of this City and now you don't want to

4

talk about it?"  Talking over Plaintiff, Matakas stated that he "has ruled [Plaintiff] out of order and if again [indecipherable] you'll be asked to leave this room." Plaintiff resumed speaking, stating "I'm going to tell you what you do right now," at which point Matakas interrupted, saying to Plaintiff: "You are out of order and you are done."  Over Plaintiff's verbal protest, Matakas asked the City's police chief to "please escort this gentlemen from [the chambers]."  Plaintiff yelled that he "has the right to speak about the finances of this town" and invited the police chief to arrest him.  The police chief declined to do so and Plaintiff was escorted from the room.  *See* DVD, Defs.' Mot. at Ex. D (ECF No. 30-5).  At the conclusion of the meeting, the city council voted to "table" their discussion on Parker's April 9 memorandum without approving or rejecting the loan proposal.  4/14/14 Meeting Minutes, Defs.' Mot. at Ex. E (ECF No. 30-6).

Plaintiff filed the present lawsuit on September 16, 2014.  The original complaint names only the City and Matakas as Defendants, and contains two counts.  In the first count, Plaintiff alleges that that his free speech rights were abridged when he was prevented from finishing his remarks at the special city council meeting and ejected from the meeting.  Plaintiff also alleges that the City has "an illegal policy, custom and/or practice" of preventing citizens from speaking on matters of public concern at city council meetings, discussing two examples of individuals other than Plaintiff who were silenced at, and removed

5

from, city council meetings.  In the second count of his original complaint, Plaintiff alleges that the City and Matakas ejected him from the meeting in retaliation for expressing a view with which Matakas disagreed.  Plaintiff sues Matakas in both his official capacity and his personal capacity.

On September 24, 2014, eight days after Plaintiff filed his lawsuit against the City and Matakas, Parker issued Order No. 2014-043.  The order temporarily suspends the operation of a number of the City's commissions, including the Police and Fire Civil Service Commission ("PFCSC"), "until such time as the financial emergency in Allen Park is lifted or terminated by the Governor."  Order No. 2014-043, Parker Mot. at Ex. A (ECF No. 21-2).  Plaintiff sat as an unpaid, volunteer commissioner on the PFCSC "for many years," according to his verified amended complaint, a position from which Plaintiff derived "[a] great part of [his] life enjoyment and identity in the Allen Park Community."  Am. Compl. ¶¶ 56, 71 (ECF No. 12).

On November 14, 2014, Plaintiff filed an amended complaint adding Parker as a Defendant based on the facts discussed in the preceding paragraph.  Plaintiff sues Parker in both her official capacity and her personal capacity.  The amended complaint contains two new counts that were not included in the original complaint.  The first new count is a First Amendment retaliation claim against Parker.  Plaintiff alleges that Parker suspended operation of the PFCSC in

6

retaliation for filing the present lawsuit.  In the second new count, Plaintiff alleges that Parker and Matakas conspired to retaliate against him for filing the present lawsuit by suspending operation of the PFCSC.

On December 23, 2014, Parker filed a motion to dismiss, arguing that Plaintiff's amended complaint does not state a plausible First Amendment retaliation claim against her and that, in any event, she is entitled to qualified immunity.  On January 7, 2015, the City and Matakas filed a motion for summary judgment, arguing that they did not violate Plaintiff's First Amendment rights by removing him from the special city council meeting on April 14.

## III.  SUMMARY JUDGMENT MOTION OF THE CITY AND MATAKAS

### A.  Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56 instructs courts to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The relevant inquiry "is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).

### B.  Plaintiff's First Amendment Freedom of Speech Claim

7

The City and Matakas argue that the special city council meeting on April 14 was a limited public forum and, as such, the City can permissibly restrict speech to a designated topic, so long as the restriction does not discriminate against speech on the basis of viewpoint and is reasonable in light of the purpose served by the forum. They further contend that they did not violate Plaintiff's right to free speech by interrupting Plaintiff's presentation and ordering his removal from the meeting because Plaintiff failed to address the specific topic for which the meeting was designated.

Plaintiff does not dispute that the city council meeting was a limited public forum and that reasonable, viewpoint-neutral restrictions were permissible. Rather, Plaintiff argues that the topic of his speech fell within the scope of the designated meeting topic and that, therefore, his free speech rights were violated when Matakas prevented him from completing his remarks and ejected him from the meeting. Plaintiff believes that his presentation was halted, and that he was removed from the meeting, because Matakas did not like Plaintiff's viewpoint on the debated subject, namely, whether the City should borrow money.

A limited public forum "consists of public property which the state has opened for use by the public as a place for expressive activity." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S. Ct. 948, 955 (1983). In a limited public forum, "[r]easonable time, place and manner regulations are

8

permissible, and a content-based prohibition must be narrowly drawn to effectuate a compelling state interest." *Id.* at 46, 103 S. Ct. at 955. Moreover, the government may restrict speech in a limited public forum to specified subjects so long as the restriction does not discriminate based on viewpoint:

> When the State establishes a limited public forum, the State is not required to and does not allow persons to engage in every type of speech. The State may be justified in reserving its forum for certain groups or for the discussion of certain topics. The State's power to restrict speech, however, is not without limits. The restriction must not discriminate against speech on the basis of viewpoint, and the restriction must be reasonable in light of the purpose served by the forum.

*Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-07, 121 S. Ct. 2093, 2100 (2001) (internal quotation marks, brackets, and citations omitted); *see also Perry*, 460 U.S. at 46 n.7, 103 S. Ct. at 955 n.7 ("A public forum may be created for a limited purpose such as . . . for the discussion of certain subjects."); *City of Madison v. Wisc. Emp't Relations Comm'n*, 429 U.S. 167, 175 n.8, 97 S. Ct. 421, 426 n.8 (1976) ("Plainly, public bodies may confine their meetings to specified subject matter.").

The issue of contention between the parties here is narrow. As mentioned, Plaintiff does not dispute that the special city council meeting was a limited public forum, nor does he dispute that the City had the right to restrict the speech in that forum to a specific, designated subject matter. The dispute between the parties is

9

limited to whether Plaintiff's speech fell within the scope of the designated meeting topic.  If Plaintiff was speaking off-topic, then he was properly excluded from the meeting.  But if his speech implicated the designated agenda topic, then the City and Matakas violated Plaintiff's free speech rights by silencing him and removing him from the meeting.  *See, e.g.*, *Freedom from Religion Found., Inc. v. City of Warren*, 873 F. Supp. 2d 850, 863 (E.D. Mich. 2012) ("[A] speaker may properly be excluded from a limited public forum because he wishes to address a topic not encompassed within the purpose of the forum.").

The meeting agenda specifies the topic up for debate: "Council review of Emergency Manager's April 9th memo."  The memorandum, in turn, proposed that the City proceed with an emergency loan.  Thus, the subject of the meeting was simply whether the City should take an emergency loan.

In their brief, the City and Matakas argue that Plaintiff did not speak about the designated topic: "When Plaintiff came to the podium to speak during public comment, he spoke at length about the police department budget cuts and the quality of the police force."  Defs.' Mot. at 8 (ECF No. 30).  Although the City and Matakas suggest in their brief that Plaintiff never touched on the designated agenda topic, *see id.* at 7 ("[Plaintiff] spoke . . . only about the police department budget cuts and the quality of the police force"), their counsel conceded at oral argument that Plaintiff began his remarks on point.  Therefore, the theory of the City and

10

Matakas is that although Plaintiff began his remarks on point, his remarks drifted off-point, and only then was he silenced.

After addressing the agenda topic, whether the City should proceed with the emergency loan proposed by Parker, Plaintiff began talking about the condition of the City's police and fire departments:

> And when you do that [borrow money], look at the condition of our police and our fire department even though we passed that millage on the sixth. We used to get the cream of the crop in the police and the fire department when we had a couple of dollars. In case you don't know about it because you wouldn't let me speak last meeting, we cannot get interested candidates even though they pay $10,000 to go through the school to become police officers.

Plaintiff fails to explain why or how his comments about the condition of the City's police and fire departments are relevant to the designated agenda topic, i.e., whether the City should proceed with an emergency loan. At best, Plaintiff's comments about the condition and personnel of the police and fire departments are relevant to the City's general fiscal policy, but the City's general fiscal policy was not the designated agenda topic. Therefore, Matakas reasonably concluded that Plaintiff strayed off topic and Matakas' decision to halt Plaintiff's presentation was constitutionally permissible. *See Jones v. Heyman*, 888 F.2d 1328, 1332 (11th Cir. 1989) (city's "general fiscal habits" deemed not relevant to designated meeting topic, which was "senior citizen discounts for garbage removal"). This Court does not second-guess Matakas' reasonable determination that Plaintiff drifted off-point

11

when he began discussing the City's police and fire departments. *See United States v. Albertini*, 472 U.S. 675, 689, 105 S. Ct. 2897, 2907 (1985) ("The validity of [content-neutral speech] regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests.").

Moreover, Plaintiff's contention that his speech was halted based on the viewpoint expressed (i.e., Plaintiff's opposition to proposed action supported by Matakas) is belied by the fact that Matakas allowed Plaintiff to express his viewpoint on the designated topic. Importantly, Matakas did not interrupt Plaintiff until *after* he concluded his remarks that were unquestionably relevant to the designated agenda topic. Had Matakas intended to suppress speech opposing Parker's proposed plan, as alleged, Matakas would have stopped Plaintiff earlier, while Plaintiff was unquestionably on topic and clearly expressing his opposition.

For these reasons, the Court will grant summary judgment in favor of the City and Matakas on Plaintiff's First Amendment freedom of speech claim.

### C. Plaintiff's First Amendment Retaliation Claim

Plaintiff alleges in count two of his amended complaint that the City and Matakas retaliated against him for expressing views in opposition to the emergency loan by "illegally removing him" from the special city council meeting. Am. Compl. ¶ 31 (ECF No. 12). For the reasons stated above, Matakas' decision to

remove Plaintiff from the special city council meeting was not unconstitutional or illegal under the circumstances.  As discussed, an individual is properly excluded from a limited public forum where the topic of the individual's speech in that forum strays from the topic for which the meeting was designated.  *See Freedom from Religion Found.*, 873 F. Supp. at 863 ("[A] speaker may properly be excluded from a limited public forum because he wishes to address a topic not encompassed within the purpose of the forum.").  Therefore, the Court will dismiss Plaintiff's retaliation claim against the City and Matakas.

## IV.  PARKER'S MOTION TO DISMISS

### A.  Legal Standard Governing Motions to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  However, the rule that "a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

13

## B.  Analysis of Retaliation Claim

Plaintiff alleges that Parker suspended operation of the PFCSC in retaliation for filing the present lawsuit.  To state a plausible retaliation claim under the First Amendment, Plaintiff must allege facts showing three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).   Parker challenges the first two elements of the *Thaddeus-X* framework.

### 1.  Protected Conduct

Regarding the first element, Parker argues that Plaintiff's retaliation claim must be dismissed because the supposed protected conduct that allegedly triggered Parker's retaliatory action – the filing of this lawsuit – does not relate to a matter of public concern.  *See Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488, 2493 (2011) ("When a public employee sues a government employer under the First Amendment's Speech Clause, the employee must show that he or she spoke as a citizen on a matter of public concern.").   Plaintiff does not directly address Parker's argument in his response brief inasmuch as he fails to discuss whether the filing of this lawsuit relates to a matter of public concern, although he does note

14

that he has alleged in his amended complaint that this lawsuit constitutes protected conduct.  *See* Am. Compl. ¶ 50 ("Plaintiff filed a lawsuit with this Court . . . which is protected activity by the U.S. First Amendment.").  Despite Plaintiff's failure to meaningfully address the principal argument asserted by Parker, the Court concludes that Plaintiff's amended complaint contains sufficient factual matter to support his assertion that the present lawsuit constitutes protected conduct.[1]

"When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom."  *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S. Ct. 1951, 1958 (2006); *see also Connick v. Myers*, 461 U.S. 138, 146, 103 S. Ct. 1684, 1690 (1983) ("When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment.").  This is because "[g]overnment employers, like private employers,

---

[1] As a preliminary matter, the Court questions whether Plaintiff fairly qualifies as a "public employee" for purposes of the Supreme Court's First Amendment free speech jurisprudence, as he was merely an unpaid volunteer serving on a single City advisory board.  Am. Compl. ¶¶ 58, 60.  If Plaintiff is not a public employee, his free speech rights are not limited, and whether Plaintiff was speaking on a matter of public concern in filing this lawsuit is irrelevant.  However, Plaintiff does not dispute Parker's classification of him as a public employee, and it is not the province of the Court to formulate and resolve arguments that are not asserted by the parties.  Therefore, for the present purposes, the Court assumes without deciding that Plaintiff is a public employee.

15

need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Garcetti*, 547 U.S. at 418, 126 S. Ct. at 1958.   Thus, courts must "balance . . . the interests of [a public employee] . . . in commenting upon matters of public concern [with] the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 1734-35 (1968).

The Supreme Court recently reiterated that "[a] two-step inquiry" applies to determine "whether a public employee's speech is entitled to protection." *Lane v. Franks*, 134 S. Ct. 2369, 2378 (2014).

> The first requires determining whether the employee spoke as a citizen on a matter of public concern.   If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.   If the answer is yes, then the possibility of a First Amendment claim arises.   The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.   This consideration reflects the importance of the relationship between the speaker's expressions and employment.   A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations.

*Garcetti*, 547 U.S. at 418, 126 S. Ct. at 1958 (citations omitted).

In *Pickering*, the Supreme Court held that a teacher's letter to the editor of a local newspaper concerning a school budget is protected employee speech on a

16

matter of public concern where the letter did not "impede[] the teacher's proper performance of his daily duties in the classroom" or "interfere[] with the regular operation of the schools generally."   391 U.S. at 572-73, 88 S. Ct. at 1737. Likewise, in *Lane*, the Court held that truthful courtroom testimony by a public employee outside the scope of his ordinary job duties is protected employee speech on a matter of public concern.   134 S. Ct. at 2378.   In *Connick*, however, the Supreme Court held that a questionnaire, prepared by an assistant district attorney for the purpose of gauging the feelings of his co-workers on interoffice issues, is unprotected employee speech arising from an employment dispute.   461 U.S. at 147-48, 103 S. Ct. at 1690.   And in *Garcetti*, the Court held that an internal memorandum prepared by a prosecutor in the course of his ordinary job responsibilities is unprotected employee speech.  547 U.S. at 424, 126 S. Ct. 1961.

The *Connick* Court noted that speech that "bring[s] to light actual or potential wrongdoing or breach of public trust" is speech that addresses a matter of public concern, as is speech that "seek[s] to inform the public that [the government] [is] not discharging its governmental responsibilities."   461 U.S. at 148, 103 S. Ct. at 1690-91.   And in *Lane*, the Court further clarified that "[t]he critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties," regardless of whether the speech "relates to public

17

employment or concerns information learned in the course of public employment." 134 S. Ct. at 2379.

Against this backdrop, the Court concludes that Plaintiff's allegation that this lawsuit constitutes protected conduct is plausible.  As discussed, Plaintiff alleges that his First Amendment rights were violated when he was silenced during a city council meeting and then ejected from the meeting.  In addition, Plaintiff alleges that the City has "an illegal policy, custom and/or practice" of preventing citizens from speaking on matters of public concern at city council meetings.  The very nature of this lawsuit suggests that Plaintiff may be attempting to "bring to light actual or potential wrongdoing" by the City, *Connick*, 461 U.S. at 148, 103 S. Ct. at 1690-91, the wrongdoing being that the City and its officials not only unlawfully prevented him from speaking about a subject on which he was entitled to speak in violation of his First Amendment free speech rights, but also has a history of unlawfully preventing others from doing the same.  Moreover, *Lane* clarified that "[t]he critical question . . . is whether the speech at issue is . . . ordinarily within the scope of an employee's duties," 134 S. Ct. at 2379, and there is no indication that the protected speech here – this lawsuit, which focuses on whether the City and its officials respect the First Amendment speech rights of its residents – is within the scope of, or relates in any way to, Plaintiff's duties as an unpaid, voluntary member of a City advisory board.  Rather, the lawsuit appears to

18

be brought by Plaintiff in his capacity as a City resident who feels that his views on issues of public concern, along with the views of others, have been purposefully stifled by City officials in contravention of the First Amendment. Because it does not appear that Plaintiff is using the present lawsuit "to frustrate progress towards the ends [he has] been hired to achieve," *Guarnieri*, 131 S. Ct. at 2495, Plaintiff's allegation that the lawsuit relates to a matter of public concern is plausible.

For these reasons, the Court concludes that Plaintiff has stated a plausible claim that his speech – the filing of this lawsuit – is "protected conduct" under the first element of the *Thaddeus-X* framework.

## 2. Adverse Action

Parker also argues that Plaintiff's retaliation claim should be dismissed because Plaintiff cannot satisfy the second element of the *Thaddeus-X* framework, which requires a showing that Parker took an "adverse action" against Plaintiff "that would deter a person of ordinary firmness from continuing to engage in that conduct." *Thaddeus-X*, 175 F.3d at 394. For an action to be sufficiently "adverse," it must involve "real injury":

> We recognize that in a retaliation case, since there is no justification for harassing people for exercising their constitutional rights[,] the effect on freedom of speech need not be great in order to be actionable. Nevertheless, since § 1983 is a tort statute, we must be careful to ensure that real injury is involved, lest we trivialize the First Amendment by sanctioning a retaliation claim even if it is unlikely that the exercise of First Amendment rights was actually deterred.

19

*Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005) (internal quotation marks, brackets, and citations omitted).  Thus, "while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment."  *Thaddeus-X*, 175 F.3d at 398; *see also Bell v. Johnson*, 308 F.3d 594, 602 (6th Cir. 2002) ("[S]ome adverse actions are so de minimis that they do not give rise to constitutionally cognizable injuries.").  "[T]he adverseness inquiry is an objective one, and does not depend upon how the particular plaintiff reacted," and "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law."  *Bell*, 308 F.3d at 603, 606.  "Thus, unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury."  *Id.* at 603 (quoting *Thaddeus-X*, 175 F.3d at 398).

Parker's action here in suspending operation of several City commissions, including the one on which Plaintiff served, had the effect of depriving Plaintiff of the opportunity to continue his service as an unpaid, voluntary commissioner on the PFCSC.  Parker points out that Plaintiff's unpaid, voluntary involvement with the PFCSC "was obviously not necessary for him to either earn a living, or even

20

make his opinions known to the public," and argues that a person of ordinary firmness would not be deterred from exercising his or her rights "by the potential loss of an unpaid position." Parker Br. at 13-14 (ECF No. 21).

The following actions have been held to surpass the de minimis/inconsequential threshold: physical threats and harassment of a prisoner, *Thaddeus-X*, 175 F.3d at 398; confiscating a prisoner's legal papers and property, *Bell*, 308 F.3d at 604; issuance of four parking tickets over a two-month period totaling thirty-five dollars, *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003); charging an inmate with major misconduct, even if the charges were subsequently dismissed, *King v. Zamiara*, 150 F. App'x 485, 493 (6th Cir. 2005); disclosure of intimate details of the plaintiff's rape, *Bloch v. Ribar*, 156 F.3d 673, 679-80 (6th Cir. 1998); delay in the issuance of renewal permits, *Holzemer v. City of Memphis*, 621 F.3d 512, 524-25 (6th Cir. 2010); harm to a plaintiff's academic standing at a university, *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500-01 (4th Cir. 2005); action that threatens harm to the plaintiff's employment, *Jones v. City of Allen Park*, 167 F. App'x 398, 407 (6th Cir. 2006).

The following actions have been held to be de minimus/inconsequential actions as a matter of law: harassing, humiliating, and derogatory comments, *Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002); mere transfer of a prisoner to another prison, *King*, 150 F. App'x at 493; improper database searches

21

of the plaintiff's name, where the plaintiff suffered no harm as a result, *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584 (6th Cir. 2012); a few criticisms, admonishments, or verbal reprimands, *Revell v. City of Jersey City*, 394 F. App'x 903, 906 (3d Cir. 2010); the circulation of rumors, *Jones*, 167 F. App'x at 407.

Parker's action here – suspending operation of the PFCSC, thereby suspending Plaintiff's position as a commissioner – strikes the Court as more consequential to the life of a person of ordinary firmness than the actions held to be de minimus as a matter of law.  Although Parker's action did not result in any adverse financial consequences to Plaintiff, Plaintiff alleges in his amended complaint that he derives "[a] great part of [his] life enjoyment and identity in the Allen Park Community" from serving on the PFCSC.  Am. Compl. ¶ 71.  At this stage of the proceedings, the Court accepts this allegation as true and concludes that Plaintiff states a plausible claim that Parker's action, which deprived him of "[a] great part of [his] life enjoyment and identity," surpasses the inconsequential/de minimus threshold.

### C.  Qualified Immunity

Finally, Parker argues that she is entitled to qualified immunity.  "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  *Reichle v. Howards*, 132 S. Ct. 2088, 2093

22

(2012).  To resolve claims of qualified immunity, the Court applies a two-step inquiry:

> First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right.  Second, . . . the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.

*Pearson v. Callahan*, 555 U.S. 223, 231-32, 129 S. Ct. 808, 815-16 (2009) (citation omitted).  Thus, to defeat Parker's assertion of qualified immunity, "Plaintiff must show both that, viewing the evidence in the light most favorable to [him], a constitutional right was violated and that the right was clearly established at the time of the violation."  *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009).

### 1.  Violation of Constitutional Right

Regarding the first inquiry under *Pearson*, Plaintiff alleges that Parker retaliated against him for engaging in protected First Amendment speech – namely, filing this lawsuit – by suspending operation of a commission on which Plaintiff sits and derives "[a] great part of [his] life enjoyment and identity in the Allen Park Community."  Am. Compl. ¶ 71.  The Court concludes that Plaintiff states a plausible retaliation claim against Parker.  As discussed, Plaintiff states a plausible claim in his amended complaint that he engaged in protected conduct and that Parker took action against him that is sufficiently adverse.  Parker does not dispute

the third element of the *Thaddeus-X* framework, requiring Plaintiff to show a causal connection between his protected conduct and the adverse action taken by Parker.

## 2.  Clearly Established

The second inquiry under *Pearson* requires a showing that the right at issue was "clearly established" at the time of Parker's alleged retaliatory conduct, which occurred on September 24, 2014, the day Parker issued her order suspending operation of the PFCSC.  The Court applies the following rules in resolving this issue:

> In undertaking this inquiry, we do not assess the right violated at a high level of generality, but, instead, we must determine whether the right is clearly established in a more particularized sense.  The Supreme Court has stated that the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted.  It is not necessary, however, for the exact factual situation to have previously been declared unlawful, so long as Defendants have fair warning.

*Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) (quotation marks, brackets, ellipses, and citations omitted).  Similarly, invoking what it calls the "Goldilocks principle," the Second Circuit has described the "delicate balance" that must be struck in "calibrat[ing] . . . how generally or specifically to define the right at issue" for purposes of determining whether the right is clearly established:

24

If the right is defined too narrowly based on the exact factual scenario presented, government actors will invariably receive qualified immunity.  If . . . the right is defined too broadly, the entire second prong of qualified immunity analysis will be subsumed by the first and immunity will be available rarely, if ever.  Since neither result maintains the delicate balance between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties that lies at the heart of qualified immunity, we must chart a middle course.  Our definition must be "particularized" in the sense that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.

*Golodner v. Berliner*, 770 F.3d 196, 206 (2d Cir. 2014) (internal citations, quotation marks, brackets, and explanatory parentheticals omitted).

Therefore, in a First Amendment retaliation case like this one, "the right in question is not the general right to be free from retaliation for one's speech." *Reichle*, 132 S. Ct. at 2094.  Rather, the right in question is whether Parker had "fair warning" that the actions she took against Plaintiff in the present case were unlawful under the First Amendment, *Armstrong*, 432 F.3d at 700, or, phrased differently, whether the purported unlawfulness of Parker's actions was "apparent" to her at the time she took them.  *Golodner*, 770 F.3d at 206.

Viewing the facts in the light most favorable to Plaintiff, the Court concludes that Parker had fair warning as of September 24, 2014, the date on which she allegedly retaliated against Plaintiff, that the filing of this lawsuit

25

constitutes protected First Amendment activity.  Each case on which this Court relied to conclude that Plaintiff states a plausible claim that this lawsuit touched on a matter of public concern was decided prior to September 24, 2014.  Of particular importance is the Supreme Court's April 20, 1983 decision in *Connick*, along with its June 19, 2014 decision in *Lane*.  In the former case, the Court clarified that speech that "bring[s] to light actual or potential wrongdoing or breach of public trust" is speech on a matter of public concern, 461 U.S. at 148, 103 S. Ct. at 1690-91; in the latter case, the Supreme Court emphasized that "[t]he critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties."  134 S. Ct. at 2379.  For the reasons explained above, viewing the evidence in the light most favorable to Plaintiff, this lawsuit involves speech that "bring[s] to light actual or potential wrongdoing or breach of public trust" and does not appear to fall within the scope of Plaintiff's unpaid "employment" on a City advisory commission.  Therefore, the Court concludes that Parker had fair warning that this lawsuit constitutes protected speech under the First Amendment because it involves speech relating to a matter of public concern under the Supreme Court's First Amendment jurisprudence as it existed on September 24, 2014.

A more difficult question is whether Parker had fair warning that her decision to suspend operation of the PFCSC, a decision that had the effect of

suspending Plaintiff's role as an unpaid commissioner, was an action sufficiently adverse to deter a person of ordinary firmness from engaging in protected First Amendment activity.  Although the Court concluded above that Plaintiff stated a plausible claim in his amended complaint that Parker's action in suspending the PFCSC had a sufficiently adverse effect on him, Plaintiff offers no authority demonstrating that it was clearly established as of September 24, 2014 that suspending a person's unpaid, voluntary service is sufficiently adverse under the second element of the *Thaddeus-X* framework.[2]  Notably, "[t]he ultimate burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity."  *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992).  This means that "[P]laintiff has the burden of demonstrating that the law was clearly established at the time of the challenged conduct."  *Andrews v. Hickman Cnty.*, 700 F.3d 845, 853 (6th Cir. 2012).  Accordingly, the Court concludes that Parker is entitled to qualified immunity with regard to Plaintiff's First Amendment retaliation claim.  However, because "qualified immunity [is] a defense available only to individual government officials sued in their personal capacity," *United Pet*

---

[2] The Court's independent research reveals that it is not clearly established that suspending a person's unpaid position constitutes an adverse action for purposes of a First Amendment retaliation claim.  *See Barton v. Clancy*, 632 F.3d 9, 26-27 (1st Cir. 2011) ("[I]t was not clearly established that the loss of an unpaid volunteer position could form the basis of a First Amendment retaliation claim.").

*Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 484 (6th Cir. 2014), the Court will dismiss only the claim against Parker in her personal capacity. Plaintiff's retaliation claim against Parker in her official capacity, which is equivalent to a claim against the City, will proceed. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55, 98 S. Ct. 2018, 2035 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.").

### D.  Analysis of Conspiracy Claim

In count four of his amended complaint, Plaintiff alleges that Matakas and Parker "conspired against Plaintiff to retaliate against him for bringing [this] lawsuit." Am Compl. ¶ 67. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). Parker argues that because Plaintiff's retaliation claim against her fails, the conspiracy claim must also fail, as there is no "unlawful action" on which to base a conspiracy claim.[3] However, the Court has concluded that Plaintiff's retaliation claim against Parker in her official capacity is plausible. Therefore, the conspiracy claim is not subject to dismissal for the reason asserted.

---

[3] The City and Matakas do not seek summary judgment with regard to Plaintiff's conspiracy claim.

28

However, the Court nevertheless concludes that Plaintiff has not stated a plausible conspiracy claim against Parker and Matakas.   To state a plausible conspiracy claim, Plaintiff must allege facts showing that "[1] there was a single plan, [2] that the alleged coconspirator shared in the general conspiratorial objective, and [3] that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant."   *Id.* at 944.   In addition, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim."   *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Here, Plaintiff has failed to allege any facts suggesting that Matakas had any role in, or even knowledge of, Parker's decision to issue Order No. 2014-043 temporarily suspending operation of the PFCSC.   In light of the heightened pleading standard and Plaintiff's failure to include any facts in his amended complaint suggesting that Matakas shared in Parker's alleged plan to retaliate, the Court will dismiss Plaintiff's conspiracy claim.

### E.  Plaintiff's Request for Costs and Attorney Fees

Plaintiff devotes the last two pages of his nine-page response brief to seeking attorney fees and costs pursuant to 28 U.S.C. § 1927, which allows courts to award costs and attorney fees against an "attorney . . . who . . . multiplies the proceedings in any case unreasonably and vexatiously."   Plaintiff deems Parker's

motion "frivolous" and argues that he is entitled to attorney fees and costs for having to respond to it; yet Plaintiff's response to the motion fails to meaningfully respond to Parker's principal arguments.  Plaintiff's request for costs and attorney fees under § 1927 will be denied.

## V.  CONCLUSION

For the reasons stated above, (1) the motion for summary judgment of the City and Matakas is **GRANTED**; (2) Defendant Parker's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART** as follows: **DENIED** as to Plaintiff's retaliation claim against Parker in her official capacity; **GRANTED** as to Plaintiff's retaliation claim against Parker in her personal capacity; **GRANTED** as to Plaintiff's conspiracy claim; (3) Plaintiff's request for costs and attorney fees is **DENIED**; and (4) the stay of discovery entered on February 20, 2015 is **LIFTED**.  This case shall proceed on only Plaintiff's retaliation claim against Parker in her official capacity.

**SO ORDERED**.


Dated: June 8, 2015                    s/PATRICK J. DUGGAN
                                       UNITED STATES DISTRICT JUDGE


Copies to:
Raymond Guzall, III, Esq.
Audrey J. Forbush, Esq.
Denise C. Barton, Esq.
Erik A. Grill, Esq.